IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER GERDING, | Civil Action No. 1:21-cv-07958-ALC |
| Plaintiff, | |
| - against – | |
| AMERICAN KENNEL CLUB aka AKC, NORTH AMERICA DIVING DOGS LLC aka NADD. Mr. DOUG LJUNGREN, Mr. DENNIS B. SPRUNG, and MRS. DEBRA MARKWARDT, | |
| Defendants, | |

**MEMORANDUM OF LAW IN OPPOSITION OF
THE AKC DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS SECOND AMENDED COMPLAINT**

Respectfully submitted,

By:   Alexander Gerding (*Pro Se*)
93 Crossing Place
Johnstown OH, 43031
Phone (386) 871-4331

Dated, May 22, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................  ii

TABLE OF AUTHORITIES........................................................................................................ iv

PLAINTIFF'S RESPONSE TO AKC DEFENDANTS MOTION TO DISMISS................................................. 1

INTRODUCTION - STATEMENT OF FACTS......................................................................... 1-4

LEGAL ARGUMENTS................................................................................................ 4

I. MOTION TO DISMISS STANDARD........................................................................... 4

      a) AKC DEFENDANTS CONTEND FRAUD CLAIMS UNDER FED. R. CIV. P. 9(b)................... 4-6

II. CONSTITUTIONAL CLAIMS – AKC DEFENDANTS DISPUTE STATE ACTOR STATUTE ................ 6-12

III. AKC DEFENDANTS REJECT CLAIM FOR RETALIATION.................................................. 12-14

IV. AKC DEFENDANTS REJECT EQUAL PROTECTION CLAIM – DISCRIMINATION...................... 14-16

V. AKC DEFENDANTS REJECT DUE PROCESS CLAIM AND 501(c)(4) STATUTE CLAIMS........... 16– 17

VI. BREACH OF CONTRACT – AKC DEFENDANTS DISPUTE CONTRACT,
      AGREEMENT CONCERNED PLAINTIFFS DOG AND NOT HIM ........................................... 17-18

VII. MONOPOLY CLAIMS – PRODUCT TYING *PER SE*..................................................................18-19

VIII. AKC DEFENDANTS CONTEND ENFORCEABILITY OF THE ANIMAL WELFARE ACT

AND REJECT CLAIMS AGAINST CORPORATE OFFICERS ...........................................19-20

IX. AKC DEFENDANTS REJECT CLAIM FOR LIBEL AND DEFAMATION......................................... 20-23

X. CLAIM OF IMPEDIMENT AND OBSTRUCTION OF A PROFESSIONAL CAREER......................... 23-24

SUMMARY.................................................................................................................... 24-25

CONCLUSION................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Nash v. Astrue*,

 No. 1:12-cv-00694-SMS (E.D. Cal. June 19, 2012) ....................................…............................ 1


*J4 Promotions, Inc. v. Splash Dogs,*

 LLC, No. 08 CV 977 (N.D. Ohio Feb. 13, 2009) ............................................................. 2


*B.S.W. Grp., Inc. v. Comm'r of Internal Revenue,*

 70 T.C. 352 (U.S.T.C. 1978) .................................................................................…. 2


*Eleven Line v. North Texas State Soccer Ass'n*,

 213 F.3d 198, 199 (5th Cir. 2000) ................................................................................ 2


*Bobal v. Rensselaer Polytechnic Institute*,

 916 F.2d 759 (2d Cir. 1990) .................................................................................…. 3


*Theilmann v. Rutland Hospital, Inc.,*

 455 F.2d 853, 855 (2d Cir. 1972) .............................................................................…. 3


*Conley v. Gibson,*

 335 U.S. 41, 48 (1975) ................................................................................................ 4


*Bell Atlantic Corp v. Twombly*,

 550 U.S. 540.570 (2007) ............................................................................................ 4


*Borsellino v. Go. Sachs Gr., Inc.,*

 477 F.3d 502, 507 (7th Cir. 2007) .............................................................................. 5

*Ashmore v. CGI Grp. Inc., 11 Civ. 8611 (LBS),*

   at *2-3 (S.D.N.Y. June 12, 2012) ............................................................................ 6


*Wisch v. Sanford School, Inc.,*

   420 F. Supp. 1310, 1313 (D. Del. 1976) ................................................……....… 7


*Pendrell v. Chatham College*,

   370 F. Supp. 494 (W.D.Pa. 1974) ..........................................................….…..… 7


*Lavoie v. Bigwood,*

   457 F.2d 7, 15 (1st Cir. 1972) .................................................................……..… 7


*United States v. Price*,

   383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) ...............................…....… 7


*Jackson v. Metropolitan Edison Company*,

   348 F. Supp. 954, 956 (M.D. Pa. 1972) ..................................................…....… 7


Burton v. Wilmington Pkg. Auth,

   365 U.S. 715 (1961) ..............................................................................…....… 7


*Pueblo Aircraft Service v. City of Pueblo,*

   679 F.2d 805, 811 (10th Cir. 1982) ........................................................…..… 9


*Hannon v. City of Waterbury,*

   106 Conn. 13, 136 A. 876 (1927) ...........................................................…..… 9


*Walla Walla v. Walla Walla Water Co.,*

172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341 (1898) ................................................................ 9

*National Audubon Society v. Superior Court,*

33 Cal.3d 419, 433-34 (Cal. 1983) .......................................................…......... 9

*Colberg, Inc. v. State of California* ex rel. Dept. Pub. Wks. (1967) ..................................…..... 10

*Ger. Alliance Ins. Co. v. Home Water Co.,*

226 U.S. 220, 227 (1912) ...................................................................................... 10

*Thompson v. Dir. of the Ill. Dep't of Corr.,*

No. 3:15-cv-850-NJR-DGW, at *6 (S.D. Ill. Sep. 27, 2018) ................................. 12, 13

*DeWalt v. Carter,*

224 F.3d 607, 618 (7th Cir. 2000) ................................................................... 12

*Watkins v. Kasper,*

599 F.3d 791, 798 (7th Cir. 2010) ................................................................... 12

*Adams v. Vandemark,*

855 F.2d 312, 316 (6th Cir. 1988) ................................................................... 12

*Hawkins v. Mitchell,*

756 F.3d 983, 996 (7th Cir. 2014) ................................................................... 13

*Ambrose v. Del. State Univ.,*

Civil Action 21-416, at *5 (D. Del. Aug. 12, 2021) ..................................................... 13

*Vertical Broadcasting, Inc. v. Town of Southampton,*

84 F. Supp. 2d 379, 390 (E.D.N.Y. 2000) ............................................................ 14, 15, 16

*City of Cleburne, Texas v. Cleburne Living Center,*

473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) .................................... 14

*Disabled American Veterans v. United States Dep't of Veterans Affairs,*

962 F.2d 136, 141 (2d Cir. 1992) ............................................................................ 14

*Martin v. American Kennel Club, Inc.,*

697 F. Supp. 997, 999 (N.D. Ill. 1988) ...........................................................14, 19,21

*Zakibe v. Zakibe*,

28 S.W.3d 373, 382 (Mo. Ct. App. 2000) ............................................................ 16, 17

*Bayne v. Jenkins,*

593 S.W.2d 519, 532 (Mo.banc 1980)...................................................................... 17

*Gieselmann v. Stegeman,*

443 S.W.2d 127, 136 (Mo. 1969) ............................................................................ 17

*Van Patten v. City of Binghamton,*

3:00-CV-1104, at *1 (N.D.N.Y. Apr. 17, 2001) ...................................................... 17

*Mullaly v. State of New York,*

86 N.Y. 365 (1881) ................................................................................................. 17

*People v. Gillespie,*

48 N.Y.S. 882, 883 (3d Dep't 1898) ........................................................................ 17

*Charles Hansen and Don G. Lents,*

    Missouri Corporation Law and Practice Section 4.5.a.2., 3. (3d ed. 1999) ........................ 18

*FTC v. Amy Travel,*

    No. 87 C 6776, slip op. at 32 (N.D.Ill. Feb. 10, 1987) ............................................... 20

*Neptune World Wide Moving, Inc.,*

    99 B.R. 584, 588 (Bankr. S.D.N.Y. 1989) ...................................................................... 21

*Shulman Transport Enterprises, Inc.,*

    744 F.2d 293, 295 (2d Cir. 1984) ................................................................................... 21

*Brian v. Richardson*,

    211 A.D.2d 413 (N.Y. App. Div. 1995) .......................................................................... 22

Friedman v. Bloomberg L.P

    884 F.3d 83, 98 (2d Cir. 2017) .....................................................................................  22

*Catrone v. Massachusetts State Racing Comm*,

    535 F.2d 669, 672 (1st Cir. 1976) ................................................................................. 23

**<u>STATUTES</u>**

26 C.F.R. § 1.501(c)(4) .............................................................................................................. 3,8

42 U.S.C § 1983 ........................................................................................................................... 7

26 U.S.C. § 501(4)(A) ................................................................................................................... 7

California Water Code § 102.................................................................................................... 10

Oklahoma State title 60 § 60..............................................................................................10

Codified Ordinances of Maumee OH 921.04 Water Connections.......................................10

U.S.C. 15 § 15 (a)...............................................................................................................19

**<u>RULES</u>**

Fed. R. Civ. P 12 (b)(6) ........................................................................................................ 4

Fed. R. Civ. P. 9(b)...........................................................................................................4 -6

Fed. R. Civ. P 12(e)...........................................................................................................5,12

Fed. R. Civ. P. 8(a)(2) .......................................................................................................6,21

**PLAINTIFF'S RESPONSE TO AKC DEFENDANTS MOTION TO DISMISS**

Plaintiff, Alexander Gerding, proceeding *Pro Se*, submits the following Brief in Opposition to Doug Ljungren's, Dennis B. Spung's and the American Kennel Cub's aka AKC's (collectively "AKC defendants") Motion to Dismiss the Second Amended Complaint ("SAC"). For the reasons set forth below Plaintiff requests that this Court deny the AKC defendants Motion to Dismiss.

**INTRODUCTION - STATEMENT OF FACTS**

---

Definition of a fact: a fact is defined as:

**1.** Something that actually exists; an aspect of reality <it is a fact that all people are mortal> • Facts include not just tangible things, actual occurrences, and relationships, but also states of mind such as intentions and opinions. **2.** An actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation <the jury made a finding of fact>.

*Black's Law Dictionary* at 628 (8th ed. 1999).

"(Nash v. Astrue, No. 1:12-cv-00694-SMS, at *4 (E.D. Cal. June 19, 2012))"

---

Plaintiff alleges in his Second Amended Complaint ("SAC")

- That Doug Ljungren, the vice president of AKC's performance department and AKC's CEO Dennis B. Sprung engaged in a collusive business scheme with the co-conspirator Debra Markwardt to launch a startup organization for the sport of dog dock diving.

- That the AKC defendants' collusive business scheme involved an exclusive association with the profit motivated organization North America Diving Dogs aka NADD to be used as the one and only agency to conduct AKC dock diving trials on a nationwide level and that all AKC customers had to go through NADD businesses to AKC title their dogs. All AKC member clubs must use the NADD as their agent to offer dock diving at their shows.

- That Plaintiff entered into a mandatory registration agreement and registered his personal property, a dog Bernhardt, to be eligible to participate in the AKC defendants title recognition program and to attend all and any NADD events that offered AKC sanctioned and approved AKC title recognized competitions.

- A detailed description of the methods Ljungren, Sprung and their co-conspirator employed to increase their AKC mixed breed dog registrations and AKC title revenues as

1

well as the attractiveness of their AKC club member shows by copying the business models of Dock Dogs Inc.[1], Ultimate Air dogs and the title recognition program of the United Kennel Club and that those three operate profit motivated. AKC entered into direct competition with those companies by installing a national network of 68 privately held profit motivated businesses as official AKC show agencies[2].

- That Plaintiff was banned from AKC competitions for life by AKC's agent Debra Markwardt for complaining about a retroactive rule change going 18 months back in time, that stripped his dog of his national ranking and voided his AKC title and all and any performances required and personal sacrifices and investments made for that title and for that ranking.

- That Plaintiff in accordance to AKC's Constitution and Bylaws filed a board complaint with AKC and sent several certified demand letters. All communication had been intentionally and willfully fully ignored and AKC defendants intentionally withheld any due process as required by their bylaws concerning disciplinary action at sanctioned AKC events.

- AKC defendants only way to communicate to Plaintiff, that he was banned from their sanctioned AKC events was a published post on the official Facebook page of the NADD defendants.

- That Plaintiff attended these AKC events to learn the trades required to become a professional dog trainer in a specialty field and to collect show merits and credentials necessary to proof his skill. Plaintiff showed successfully on national levels.

- That Plaintiff's career had come to an abrupt end due to him being banned and his inability to compete, show and interact with clients at a unique exclusive competition venue of nationwide importance and recognition including the AKC defendant's national championships. Plaintiff can no longer show any dog at any AKC dock diving event.

The SAC contains all this and more in page after page of detailed structured allegations. In addition, Plaintiff provided 37 exhibits, that combined with the SAC's content outline in great

---

[1] See J4 Promotions, Inc. v. Splash Dogs, LLC Case No. 08 CV 977 (N.D. Ohio Feb. 13, 2009) in which the Court found claims of copy right infringement and tortious business interference as well as deceptive trade practices committed through Splash dogs LLC, that had copied and operated on Dock Dogs Inc's business model.

[2] B.S.W. Grp., Inc. v. Comm'r of Internal Revenue, 70 T.C. 352, 358 (U.S.T.C. 1978) ("Competition with commercial firms is strong evidence of the predominance of nonexempt commercial purposes.") Also see Eleven Line v. North Texas State Soccer Ass'n, 213 F.3d 198, 199 (5th Cir. 2000) ("This case concerns allegedly exclusionary, anti-competitive conduct by non-profit volunteer-run soccer organizations against a for-profit indoor soccer facility that operated in the Midland-Odessa community of West Texas.")

depth and detail a sequence of facts extracted from actual events that happened in Plaintiff's real life with real consequences of real existential impact to Plaintiff's ability to make a living.

Nevertheless, AKC defendants, that praise themselves to "stand up for the rights of all dog owners"[3] and who operate as a 501(c)(4) nonprofit tax exempt social welfare organization with the primary purpose to "promote the common good and general welfare of the community"[4] move to dismiss the SAC entirely with prejudice, the harshest punishment possible[5] The simple force of the burden of prove back upon the Plaintiff apparently confusing the terms "facts" and "prove" ,  is by no means good enough to support AKC defendants Motion to dismiss nor is it appropriate at this stage of the litigation. Plaintiffs SAC E I 14 "The AKC officer Ljungren and the AKC CEO Sprung breached their fiduciary duty by withholding any due process and by supporting retaliation against the plaintiff" stands against AKC defendants "none of the Counts assertions are supported by **any** factual detail **whatsoever**". Straight forward plain allegations stand against **bold** underscored phrases that reflect nothing but the "overarching issue "as to why we are here.

The standard in the United States shall not be that those athletes of any sport striving to turn their skills and talent into a professional career become subject to corporate executions only because they filed legitimate complaints or have an inquiry about a retroactive rule change that erased their records. The precedence that the AKC defendants have set on a nationwide level, flexing their retaliatory muscles against one single dog owner that participated in AKC programs and paid for AKC services just showing his dog, is outrageous.

Once confirmed, it shall have grave impacts not only to the plaintiff but to all Americans that pursuit their careers as professional athletes and educate themselves diligently to follow the

---

[3] Mission Statement – American Kennel Club (akc.org) and see SAC exhibit A AKC mission statement

[4] 26 C.F.R. § 1.501(c)(4)-1 ("An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements. ")

[5] H Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759 (2d Cir. 1990) ("However, dismissal with prejudice is a harsh remedy to be used only in extreme situations, Theilmann v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir. 1972), and then only when a court finds "willfulness, bad faith, or any fault" on the part of the prospective deponent. See Salahuddin v. Harris, 782 F.2d at 1132 (citation omitted)")

very high standards that especially animal sports require. Morals, empathy. codes of ethics but foremost the laws of the United States of America do matter. Plaintiffs SAC is organized, structured and  particularized to his best ability at current levels of this litigation. Plaintiff has demonstrated on two occasions that he is capable of curing defects in his pleadings effectively. Plaintiff's SAC must survive and the AKC defendants' Motion to dismiss must be denied.

## LEGAL ARGUMENTS
### I. MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12 (b)(6) should be granted *only* if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief *Conley v. Gibson*, 335 U.S. 41, 48 (1975) (emphasis added); see also Fed. R. Civ. P. 12(b)(6); Bell Atlantic Corp v. Twombly, 550 U.S. 540.570 (2007) A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a Court to construe the complaint liberally, assume all facts as true, and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 556-57. A complaint should never be dismissed because the Court is doubtful that the plaintiff will be able to prove all the factual allegations contained therein. *Id.*

 AKC defendants state throughout their Motion, that the clarity of plaintiffs' pleadings was extremely deficient, a "wild array", a "word salad", "bizarre" and claims were fabricated "novelties" There were barely any facts and most allegations of the SAC were of "conclusory nature" Contrary to that, the AKC defendants were perfectly capable to clearly identify and concisely articulate their outlines as to who is sued and for what. Despite their utter dissatisfaction, AKC defendants disputed Plaintiff's standing in claims under *criminal* statutes decisively, understanding the allegations and resulting claims thereof. Obviously, if AKC defendants looked for more clarity for certain allegations and the resulting *civil* claims, they could have moved to a more definite statement under Rule 12 (e) and request Plaintiff to set forth more detail. Tellingly, they did not.

### a) AKC DEFENDANTS CONTENT FRAUD CLAIMS UNDER FED. R. CIV. P. 9(b)

In cases such as this, which include claims for fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires a more particular standard a complaint must meet, providing that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. "Contrary to AKC defendants' belief, Rule 9(b) does *not* raise the pleading standard to the level required to survive a motion for summary judgement or to prevail at trial. That would require, that Plaintiff actually proves all material issues of his case. Plaintiff only needs to set forth the particular facts of the fraud, which at this stage must be accepted as true, to survive a motion for dismissal of the SAC.

Plaintiff's SAC particularly states facts that support each element of each and every one of his fraud claims See Borsellino v. Go. Sachs Gr., Inc., 477 F.3d 502, 507 (7th Cir. 2007) ("[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate. A complaint alleging fraud must provide "the who, what, when, where, and how." *Id*. Plaintiff's private research and investigation of the AKC defendants dock diving operations, the sale of all television and marketing rights of AKC dock diving competitions, including the events "Bark in the Park" and the "AKC premier cup"[6], both held through their agent NADD, had been done with all due diligence required and discovery will show that. The chart below illustrates just one example as to how the five questions are addressed in the SAC for every fraud claim there is.

| Who? | Ljungren, Sprung and Markwardt | SAC B I ¶ 1-5 |
|---|---|---|
| What? | Devised a collusive business scheme, as defined in the SAC, whereby they would jointly conduct dog dock diving events for any breed dogs from privately owned facilities and or public spaces to solicit for mix breed dog registrations, sell dog show services, charge hidden fees and collect kickbacks using an instrument AKC title and entered into television and other sponsor and marketing contracts to profit and promote their brands. | SAC B I ¶ 8.9,13,14,15,22 SAC B III, V, VII SAC E I ¶ 2-4 SAC E V ¶2-4,8 |
| When? | Beginning on or about April 21 & 22 of 2014 and ongoing | SAC B I ¶ 8 |

---

[6] These are new developments that relate to plaintiffs' research concerning AKC dock diving competitions that are aired through the public wires of ESPN2 and ABC. The "AKC Premier Cup" hit the air May 16 of 2022 on ESPN.

| Where? | In 33 states across the United States through 68 stationary and mobile facilities | SAC Ex. Af |
|--------|-----------------------------------------------------------------------------------|------------|
| How?   | Ljungren, Sprung and Markwardt created a shell company[7], equipped it with unlimited use of all AKC credentials and resources, the AKC trademark and the exclusive product AKC title and forced all AKC customer traffic wanting to title their dogs and all AKC member clubs to contract with this company. AKC defendant's 501(c)(4) member clubs infiltrated their shows with the strict profit motivated mobile solicitor NADD. AKC runs its competitions through a stationary network of 68 private profit motivated businesses. AKC installs business owners as show judges that create inflated scores to solicit for business. The purpose is for AKC to evade its designated mission and 501(c)(4) restrictions. AKC contracts with mixed breed dog owners that exhibit their dogs in mixed breed sports and sells exclusive media, sponsor and television rights for those sports. AKC deploys an instrument "AKC title" to engage in direct competition with profit motivated companies and to absorb other non-profit organizations to control all and any dog sports throughout the United States. AKC deceived plaintiff into belief that their events were AKC regulated, that AKC conducted oversight, provided AKC judging, that his entry fees were supporting 501(c)(4) clubs and that he was protected by AKC's Constitution and bylaws. | SAC B I ¶ 4 & Ex. Ag, Ah SAC B I ¶ 22,23 & Ex. L<br><br>SAC B II ¶ 4,5,7-10,40,50 SAC B III, V, VI ¶ 8 d, 10 VII ¶ 9 SAC E I & IV, V, VI, XI Ex Aa, Ab Ex C, D<br><br>***SAC C III Harm to consumers ALL*** |

These allegations establish the essential elements for count I actual fraud and consumer fraud. Because plaintiff has met the pleading requirements articulated in Rule 9(b) the AKC defendants Motion to Dismiss must be denied.

## II. CONSTITUTIONAL CLAIMS – AKC DEFENDANTS DISPUTE STATE ACTOR STATUTE

AKC defendants' content that they are "neither state actors nor did they act 'under color' of state law." Plaintiff alleged in compliance to Fed. R. Civ. P. 8(a)(2) that "all AKC/NADD cluster

---

[7] Ashmore v. CGI Grp. Inc., 11 Civ. 8611 (LBS), at *2-3 (S.D.N.Y. June 12, 2012) (" These companies would then enter into partnership agreements with the PHAs in lieu of CGI Federal and bid for additional Section 8 subcontracts. While formally independent, under the plan they would have full access to CGI Federal's resources, experience and staff, giving them a competitive advantage during the rebid and presumably allowing them to acquire significant additional Section 8 housing contracts. ")

event shows held from mobile docks are held at locations that are owned and managed by municipalities of the state and serve the public purpose of community recreation "and "the 20'000 gallons of city water needed to conduct every single one of those events are provided free by the municipality through the local fire department "see SAC E II 3 a-d & SAC E III 5 a-d

Core concept of state action: see Wisch v. Sanford School, Inc., 420 F. Supp. 1310, 1313 (D. Del. 1976) (" In applying the Burton v. Wilmington Parking Authority test, courts have examined a number of alternative considerations — the gross number of financial and regulatory contacts between the state and the private institution, the constitutional interests of both sides, the "public function" served by the private institution, and state regulation of the very activity which allegedly deprives plaintiff of a constitutional right. See Pendrell v. Chatham College, 370 F. Supp. 494 (W.D.Pa. 1974).

Core concept of 'under color' of state law: see Lavoie v. Bigwood, 457 F.2d 7, 15 (1st Cir. 1972) ("The Supreme Court, in summarizing, seemed to answer the question affirmatively in United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966): "In cases under § 1983, `under color' of law has consistently been treated as the same thing as the `state action' required under the Fourteenth Amendment", 383 U.S. at 794 n. 7, 86 S.Ct. at 1157. ") and "and Justice Brennan in dissent, 398 U.S. at 210, 90 S.Ct. 1598, indicated that, at least in some cases, "under color of" law requires more than "state action". *Id*.)

Also see Jackson v. Metropolitan Edison Company, 348 F. Supp. 954, 956 (M.D. Pa. 1972) ("Although the core concept of "state action" has been frequently discussed by the Supreme Court, an exact definition has never been formulated,

". . . to fashion and apply a precise formula for recognition of state responsibility . . . is an `impossible task' which `This Court has never attempted' . . . Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Pkg. Auth, 365 U.S. 715 (1961)")

Out of the 45 mobile dock events listed in SAC Exh. Ab only 2, which were not AKC shows, were held from locations that were *not* owned and managed by a municipality. 100 % of the AKC cluster shows were held from public spaces. AKC as well as all AKC member clubs are 501 (c)(4) civic organizations. Under 26 U.S.C. § 501(4)(A) they are "not organized for profit but operated exclusively for the promotion of social welfare……….and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes." *Id.*  Also see 26 C.F.R. § 1.501(c)(4) 1 ("(2) *Promotion of social welfare* -(i)*In general.* An organization is operated exclusively for the promotion of social welfare if it is primarily engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated primarily for the purpose of bringing about civic betterments and social improvements.")

At all AKC cluster shows the dog dock diving hosting AKC member clubs' contract exclusively with municipalities and rarely do they ever contract with a private property lessor because of their statute.  They join forces with state municipalities, which are by definition civic organizations, to accomplish common missions and receive heavily discounted property leases. In December of 2020 Orange County, a municipality in the state of Florida, agreed to waive all $ 835,000 worth of building-rental charges for the AKC defendants as a compulsive incentive, to host their annual national championships using their mammoth convention center. The center is a substantial part of the region's economic ecosystem as most public compounds are. The AKC defendants event drew about 3'000 competitors, exhibitors and staffers during a Covid year, from all across the United States. AKC dock diving was part of that show and the NADD mobile operator received their pool water free of charge.[8]

The "gross number of financial and regulatory contacts" or "close nexus" between the AKC and its member clubs and the state are not only obvious and significant. They are of colossal and exclusive nature. The public function of the AKC is that of an agent to the state meant to lessen

---

[8] Orange County slashes convention center rent to draw shows – Orlando Sentinel

the burden of government addressing recreation, civic betterment, social welfare, economic support on regional levels and across state lines, job opportunities, education and statewide media presence of a municipality through regional television channels and the reinforcement of the animal welfare act.

No AKC member club owns its own premises to host AKC cluster shows, they must lease a substantially large property for that purpose. The municipality enables AKC clubs to host their shows at discounted rates and the counties and regions benefit greatly from those shows. See Pueblo Aircraft Service v. City of Pueblo, 679 F.2d 805, 811 (10th Cir. 1982) (“" In Hannon v. City of Waterbury, 106 Conn. 13, 136 A. 876 (1927) the court identified two distinct categories of governmental functions of a municipality — one, those duties imposed or authorized by the state for "the benefit of the general public" and the other, those duties which are "for the particular advantage of the inhabitants of the municipality, and only . . . indirectly for the benefit of the people at large." See also: Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341 (1898)”) Clearly, the Orange County Convention Center from which the AKC defendants have held and still hold their annual national championships upon research and belief since 2016, is one operated for the benefit of the general public. AKC dock diving events were added in 2015.States and the AKC join forces on a significant level.

The natural resource Water: AKC dock diving operations as well as the AKC title recognition of dock diving performances have one material fact in common: without a body of water, formed by no less than 20'000 gallons of fluid that is either held by a stationary or mobile pool, there is no dock diving. Without water the whole AKC/NADD operations and businesses are terminated and come to a definite end. Without water dog dock diving as a dog sport does not exist.

In the United States water is subject to the public trust doctrine and public trust is managed through trustees, the states and their individual branches or extended arms. Running water is *never* a commodity.  See National Audubon Society v. Superior Court, 33 Cal.3d 419, 433-34 (Cal. 1983) (“"By the law of nature these things are common to mankind — the air, running water, the sea and consequently the shores of the sea." (Institutes of Justinian 2.1.1.) From this

origin in Roman law, the English common law evolved the concept of the public trust, under which the sovereign owns "all of its navigable waterways and the lands lying beneath them `as trustee of a public trust for the benefit of the people.'" (Colberg, Inc. v. State of California ex rel. Dept. Pub. Wks. (1967) 67 Cal.2d 408, 416 [ 62 Cal.Rptr. 401, 432 P.2d 3].)")

See also California Water Code § 102 ("All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law.") See also Oklahoma State title 60 § 60 ("B. All rights to the use of water in a definite stream in this state are governed by this section and other laws in Title 82 of the Oklahoma Statutes, which laws are exclusive and supersede the common law.") The state of California as well as the states of Arizona and Oklahoma conduct AKC dock diving events both stationary and at AKC cluster shows. Plaintiff was eligible to attend and exhibit at AKC/NADD dock diving events anywhere in the United States.

All AKC/NADD mobile pools at AKC club cluster shows held from public grounds are filled with hydrant water. SAC B II 14 ¶ 4. The hydrants on those grounds are public property and can only be accessed through authorization of a public official[9], that allows to break the seal. The water dispensed from those hydrants is the public funded fluid subject to public trust and regulated by the trustee of the municipality and provided free of charge.  See Ger. Alliance Ins. Co. v. Home Water Co., 226 U.S. 220, 227 (1912) ("But the city was under no legal obligation to furnish the water; and if it voluntarily undertook to do more than the law required, it did not thereby subject itself to a new or greater liability. It acted in a governmental capacity,")

The AKC member club Richmond dog fanciers had to cancel their AKC dock diving event to be held August 5 to 7 2022 at the Dixon-May Fairgrounds in the state of California[10]. In fact, AKC mobile dock diving events have been, upon research and belief, indefinitely

---

[9] 921.04 WATER CONNECTIONS. (amlegal.com) see 921.13 (b) OH Codified ordinance for the city of Maumee where Plaintiff attended AKC/NADD regionals at the Lucas County Fairground October 2 to 4 2020

[10] NADD | 2022 AKC Richmond Dog Fanciers Show (northamericadivingdogs.com)

terminated in the entire state of California, the 20'000 gallons of water necessary to conduct the mobile events, want be appropriated by state officials. The year prior the club received the appropriation and the mandatory waste water permit to dump those 20'000 gallons of water after three days of use so that dogs can jump in it. The AKC dock diving title program for titles issued that are achieved through competitions held by AKC club members at AKC cluster shows is no longer available in the state of California, who put the AKC/NADD mobile dock operations out of business. And other states with water appropriation laws shall follow[11]

Water is strict subject to appropriation laws or regulated by riparian rights or hybrids thereof. States are in significant control of the cost of operations and business success of the entire mobile fleet. States provide the public grounds to operate from and the natural resource water as the material fundamental foundation to function. The water comes free of charge to the profit motivated AKC agency and vendor NADD. 20'000 gallons, over and over, year by year - at thousands of events across the United States of America. There is more than just a "close nexus "or "just a regulation". There is an obvious dependency of magnitude between the AKC/NADD business to the state. States enable this business or shut it down.

The AKC operates substantially in animal welfare and animal control. Since 2000 AKC field agents have conducted over 70'000 kennel inspections and will exchange their findings with the appropriate law enforcement authorities. They check dogs for proper identification such as micro chips or tags. AKC breeders with more than four dogs must be licensed through the United States Agriculture Department aka USDA. The AKC operates in a field that is a traditional function of and reserved to the government, namely the USDA.

AKC's inspections are clearly meant to lessen the burden of government. As AKC defendants have advised this Court in their motion to dismiss on page 23 VI B "The U.S. Congress, however, has vested enforcement authority under the AWA (Animal Welfare Act) solely, with the secretary of agriculture….." The strict regulatory enforcement of animal welfare

---

[11] [8 states running out of water (usatoday.com)](#)

and the conducted animal control over twenty-two years and ongoing in over 70'000 cases through AKC kennel inspections is by definition the purpose of AKC, in full compliance with its mission. The inspections are for fact a traditional function reserved to the government.

Plaintiff has alleged facts that show the AKC defendants to be a state actor and to act 'under color' of state law. AKC defendants dock diving events and dock diving titles are not "just regulated", they significantly and obviously *depend* on the state and are strict subject to the water appropriation of the states of California, Arizona and Oklahoma[12].

AKC defendants' Motion must be denied.

### III. AKC DEFENDANTS REJECT CLAIM FOR RETALIATION

AKC defendants reject this claim asserting "they are not state actors" and that the AKC agent Markwardt banned Plaintiff for "relentless threats".  Plaintiff has alleged state actor status

Despite AKC defendants' allegations that "relentless threats" existed, they have fell woefully short to produce any facts of any substance or meaning that precisely outline plaintiff's conduct of harassment or "relentless threats" that led to plaintiffs ban, other than that "he threatened to sue".  See Thompson v. Dir. of the Ill. Dep't of Corr., No. 3:15-cv-850-NJR-DGW, at *6 (S.D. Ill. Sep. 27, 2018) ("An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000). Thompson has a First Amendment right to file grievances and lawsuits. Id.; Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010). In order to prevail on his claim of retaliation, Thompson must show: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the

---

[12] Adams v. Vandemark, 855 F.2d 312, 316 (6th Cir. 1988) ("We distinguish Burton. The Supreme Court's finding of state action in Burton was based in part upon the fact that the city leased the restaurant the space for its business, and construction, repairs, and maintenance of the property were made from public funds. 365 U.S. at 713-14, 81 S.Ct. at 898. ")

decision to impose the deprivation." Hawkins v. Mitchell, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted).")

Plaintiff experienced an extremely harsh adverse reaction. He was to be used as the status quo to demonstrate corporate powers.  And those were meant to be seen, for all clients of AKC dock diving events, published on a social media platform Facebook. Clearly, the ban, instantly combined with a Facebook post, that explicitly highlighted the consequences and actions taken in response to consumer complaints shall deter any person of ordinary firmness from exercising their [constitutional] rights. See Ambrose v. Del. State Univ., Civil Action 21-416, at *5 (D. Del. Aug. 12, 2021) ("Adverse action must be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." "To establish the requisite casual connection, [Ms. Ambrose] must [plead] facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"")

Doug Ljungren, vice president in full control of AKC's performance department, willfully and intentionally refused to take any action nor to process any of plaintiff's complaints[13]Ljungren breached his fiduciary duty he owed the plaintiff by not conducting proper oversight of any form to events under his sole authority, given to him through the board of the AKC and the delegates of AKC club members. Ex. Aj

Plaintiff alleged that he contacted AKC on no less than eleven occasions submitting his board complaint and sent several certified letters to AKC's executive secretary Mrs. Gina Di Nardo. Dennis B. Sprung is the CEO of the AKC and in control of any and all operations. Within days Sprung was fully aware of the actions of AKC's agency NADD. He willfully and intentionally refused to take any action nor to investigate nor to order any due process or order a hearing. Doug Ljungren and Dennis B. Sprung ordered the entire AKC to mute and retaliated against the

---

[13] Thompson v. Dir. of the Ill. Dep't of Corr., No. 3:15-cv-850-NJR-DGW, at *2 (S.D. Ill. Sep. 27, 2018) ("Thompson, do you really believe me and my staff have time to be answering lawsuits? We take lawsuits and threats—and we take lawsuits as threats, and this is what we do to prisoners who file them…………………………")

plaintiff to prevent him from filing a lawsuit and from blowing the public whistle on his and AKC's unlawful activities. Sprung breached his fiduciary duty he owed the plaintiff in refusal to exercise his authority, to deploy AKC's regulatory powers, vested to him by the delegates of AKC club members and the AKC board. SAC B IV ¶ 8-11 & Ex. Z & Ex. Aj

Plaintiff has sufficiently and in great depth and detail alleged facts for retaliation. AKC defendants' Motion must be denied.

### IV. AKC DEFENDANTS REJECT EQUAL PROTECTION CLAIM – DISCRIMINATION

AKC defendants reject this claim asserting "they are not state actors". Plaintiff has alleged state actor status.

AKC defendants treated plaintiff selectively by orchestrating a massive corporate effort to simply shut him out to shut him up. They intentionally and willfully suppressed any form of communication from their performance department, their government relations department, their board, their executive secretary Gina Di Nardo, their legal department, their club relations department and their communications department, all of which plaintiff contacted. They didn't respond to voice mails nor to certified mail with signature request they signed for. AKC defendants left the plaintiff hanging out to dry. SAC B IV ¶ 8-11 & Ex. Z

See Vertical Broadcasting, Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 390 (E.D.N.Y. 2000) ("The constitutional right to equal protection of the law is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Disabled American Veterans v. United States Dep't of Veterans Affairs, 962 F.2d 136, 141 (2d Cir. 1992).")

Plaintiff had dealt all his life with animal sports organizations on national and international levels such as the United States Equestrian Federation, the German FN or the FEI. He knows how to wear a suit and a tie and how to properly address the issues that had arisen. SAC Ex. Z.

Plaintiff followed AKC rules and guidelines addressing conduct prejudicial to the sport[14] at sanctioned events by the AKC rule book. In direct response the entire AKC that "upholds the integrity of its registry" and "works for the right of all dog owners" muted and had nothing to say about "prejudicial conduct" to their own AKC dog sports. Ex aj & ai.

Plaintiff is a foreign immigrant from Germany SAC B II IV ¶ 3, one of the most sophisticated nations in animal sports in the world, that sets the highest standards in dog breed quality to be imported to the United States as foundation stock[15] AKC defendants feared that plaintiff blows the whistle on them and their sports. SAC E II ¶ 2 and VII ¶ 7,8. They chose to discriminate against plaintiff with the intend to inhibit and punish his constitutional rights to file consumer complaints and lawsuits. And they did so in bad faith with the intent to injure. (Vertical Broadcasting, Inc. v. Town of Southampton, 84 F. Supp. 2d 379 (E.D.N.Y. 2000))

The AKC defendants did that intentionally and targeted, to set a precedence, a status quo and an example to their AKC dock diving community. As of today, they support their NADD agency's Facebook publication of the ban, represented by superior counsel. They chose expensive litigation over a simple hearing and due process as outlined by their own bylaws.  AKC defendants found it much more difficult to let a single dog owner be reinstated in their sports, to reinstate his dogs record and to validate his AKC title as requested in plaintiff's board complaint (Exh. Z) , than marching into federal court. And they rather challenge an American citizen's freedoms and constitutional rights and deprive him from pursuing his career in a sport, that they offer, to sustain his livelihood, than to live up to their own by now fully shattered

---

[14] Martin v. American Kennel Club, Inc., 697 F. Supp. 997, 999 (N.D. Ill. 1988) ("Based on that preliminary inquiry the Committee determined that such conduct, if proved, would indeed constitute conduct prejudicial to the sport and voted to hold a hearing the next day (December 13, 1986) to evaluate the merits of the charges. After that hearing the Committee ultimately found Martin had committed the alleged violations. Pursuant to American's regulations, Martin was suspended from all privileges of American.")

[15] Ljungren himself is a breeder, seller and enthusiastic promoter of German shorthair pointers and the agent Markwardt a professional breeder and member of AKC's breeder of merit 100 class for Doberman pinschers.

mission statement. They singled plaintiff out and treated him like no one else in AKC's entire history, to set harsh firm standards for their new dog sports businesses and new clients.

Plaintiff has established a claim for discrimination in bad faith with the intent to injure. AKC defendants Motion must be denied.

## [i]V. AKC DEFENDANTS REJECT DUE PROCESS AND 501(c)(4) STATUTE CLAIMS

AKC defendants reject this claim asserting "they are not state actors". Plaintiff has alleged state actor status and alleged that AKC's Constitution and bylaws contain and outline all and any procedures for dealing with misconduct in relation with AKC sanctioned events and the AKC recognized sanctioned title performances thereof. SAC Ex. X, Ai, Aj.

AKC's Constitution and bylaws are the organizations internal operating rules and contrary to AKC defendants' belief those are enforceable by private citizens[16] A willful and intentionally violation of those rules in bad faith meant to expose plaintiff to an execution a la' corporate style to prevent research, investigations, discovery and public awareness is certainly outrageous.  ("conduct "so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale, 170 F.3d at 263.") Vertical Broadcasting, Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 391 (E.D.N.Y. 2000).

AKC defendants banned plaintiff without any form of hearing or process and in total disregard of the end result of the process that was afforded. Fact is, that Plaintiff cannot show at any AKC dock diving event nor earn an AKC title with any dog.

 Ljungren as vice president of the AKC performance department indisputably owed the plaintiff his fiduciary duty to assure that the AKC events, plaintiff participated in and were he showed his property, a dog named Bernhardt, were held under AKC rules and regulations.  See Zakibe v.

---

[16] See website of the Internal Revenue Service IRS Exempt Organization - Bylaws | Internal Revenue Service (irs.gov) Plaintiff concedes that he cannot enforce the IRS tax code but he can enforce the Constitution and bylaws mandatory for recognition under and required by the tax code

Zakibe, 28 S.W.3d 373, 382 (Mo. Ct. App. 2000) ("An officer or director "`occupies a position of the highest trust and confidence and the utmost good faith is required of him in the exercise of the powers conferred on him.'" Bayne v. Jenkins, 593 S.W.2d 519, 532 (Mo.banc 1980) (quoting Gieselmann v. Stegeman, 443 S.W.2d 127, 136 (Mo. 1969))")

Plaintiff has in depth and detail alleged facts for a due process claim on the face of the SAC. AKC defendants Motion must be denied.

### VI. BREACHES OF CONTRACT CLAIM - AKC DEFENDANTS ALLEGED THEY CONTRACTED WITH PLAINTIFF'S DOG

AKC defendants state in their Motion on pg 20 ¶ 2 Quote "a registration agreement between *him* and AKC (which did not exist)" end of Quote. The implication of the bizarre legal theory, that a dog, recognized as property and animated object signs contracts, pays the fees and competes taking full liability maneuvering itself, is nothing but short of a whopper.

The contract is that of a property registration agreement between plaintiff and AKC, that was mandatory to put his personal property, a mixed breed Pitbull dog named Bernhardt, to use, to collect merits and credentials of nationwide meaning and importance to pursuit a professional career as a dog trainer.  The participation in AKC events was meant to promote the dogs clearly stigmatized breed and to show what these dogs are capable of doing. See Van Patten v. City of Binghamton, 3:00-CV-1104, at *1 (N.D.N.Y. Apr. 17, 2001) ("The source of a property right is determined by looking to the relevant state law, which here is the law of the State of New York. McMenemy, ___ F.3d at ___. Under New York law, a dog is property. Mullaly v. State of New York, 86 N.Y. 365 (1881) ("[The] definition of personal property is certainly comprehensive enough to include dogs."); People v. Gillespie, 48 N.Y.S. 882, 883 (3d Dep't 1898)")

Plaintiff has alleged facts that his contract was breached by damaging and permanently traumatizing plaintiffs' property and by the refusal to apply AKC's Constitution and bylaws as demanded in that contract. AKC defendants owed plaintiff the fiduciary duty to oversee those contracts and warrant that they were full filled. See Zakibe v. Zakibe, 28 S.W.3d 373, 382 (Mo.

Ct. App. 2000) ("An officer or director has a fiduciary duty to protect the corporation's interests. Management Co. , 918 S.W.2d at 810. See also Charles Hansen and Don G. Lents, Missouri Corporation Law and Practice Section 4.5.a.2., 3. (3d ed. 1999). ")

AKC defendants Motion must be denied.

## VII.  MONOPOLY CLAIMS – PRODUCT TYING *PER SE*

AKC defendants confuse the terms "market", "product", and "industry" that were properly and factual pleaded. Plaintiff has alleged facts that define and allocate the relevant product market

- AKC defendants and NADD defendants conspired to restrain trade and commerce in the industry of dog dock diving throughout the United States

- "The only source for the plaintiff and all and any other customers throughout the United States of America to AKC title his dog is the vendor NADD. The product AKC title is stringently tied and limited to one vendor." (Explanation see first ¶ after bullet list)

- AKC has colossal marketing powers in the dog sports and breeding industry in the United States and controls and impacts millions of dog owners all around the world.

- AKC created a unique monopolized product of value and meaning for American consumers, wiling and motivated to jump dogs in a pool and receive AKC titles for that.

- AKC provides its trademark to all ribbons, trophies, banners and title certificates that are associated with the services sold at their AKC/NADD dock diving events.

- AKC refused to deal with any other organization in the dock diving industry and withheld their product AKC title from them

- AKC defendants and NADD defendants installed a group of 68 commercial businesses strictly limited to the sale of their services and products all across the United States.

The activity is that of an association of a state empowered producer "the only source", AKC with a service provider "the only source" NADD, that offers that producers product "AKC title" exclusively tied to its unique services "swimming pool services for dogs" to a specific relevant and even directly targeted market of millennials (SAC B VII ¶ 14,15 & Ex.K) and or "the plaintiff and all and any customers" interested in the industry of dock dog diving and AKC recognition

collectively a "niche market"[17]. Plaintiffs "bizarre theory of AKC reinventing itself to millennials" (AKC Motion pg. 17 ¶ D) turns indeed into a fact once the term market is correctly defined.

AKC and NADD engage in unlawful product tying *Per Se*, the statute the claim is brought under is U.S.C. 15 § 15 (a) AKC defendant's Motion must be denied.

## VIII. AKC DEFENDANTS CONTENT ENFORCEABILITY OF THE ANIMAL WELFARE ACT - AKC DEFENDANTS REJECT CORPORATE OFFICERS LIABILITY

| Who? | AKC defendants and NADD defendants | SAC B I |
|------|-----------------------------------|---------|
| What? | Devised a collusive business scheme where they would reward consumers with AKC trademarked ribbons, trophies, title certificates and AKC national championship participation, given upon buying services mandatory to complete a series of jumps executed by dogs leaving from a platform in a body of water held by a pool set up and operated by the NADD | SAC B I ¶ 8.9,13,14,15,22 SAC B III, V, VII SAC E I ¶ 2-4 SAC E V ¶2-4,8 Ex Aa, Ab |
| When? | Beginning on or about April 21 & 22 of 2014 and ongoing | SAC B I ¶ 8 |
| Where? | At AKC cluster shows and 68 stationary facilities spread through 33 states all over the United States | SAC Ex Ab, Af |
| How? | Through the use of any type and breed of dogs, as young as six months of age, taking advantage of their natural play and prey drives having them chase and jump after a floating toy. AKC defendants used all their expertise, knowledge, and credentials to deceive plaintiff and the public into belief that those performances where a healthy natural activity for a dog and that any dog swims and easily copes with freezing water temperatures regardless of their coats. AKC manipulated plaintiffs' belief that dogs hunt and jump identical to cats and that particularly young dogs' joints, bones ligaments and muscles were strong enough to cope with excessive jump repetitions and water exposure defendants manipulated plaintiffs' belief that the force upon a dog to fail completing its task was a rewarding productive and healthy way of training.  All of that by using plaintiffs and publics reliance and trust into AKC's credentials as an expert for dog sports and by violating the animal welfare act and AKC's mission statement and purpose | SAC B I ¶ 6,7 SAC B II ¶ 15-29 SAC B VII all SAC D III ¶ 5 SAC E VIII |

---

[17] *Martin v. American Kennel Club, Inc.*, 697 F. Supp. 997, 1000 (N.D. Ill. 1988) ("Some conduct is so predominantly anticompetitive that it is considered per se illegal. Such behavior involves "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry…………………………")

Ljungren and Sprung conspired with Markwardt to operate a dock diving business. That's a factual allegation. AKC defendants state "the SAC makes various conclusory assertions against them but alleges no facts ". AKC defendants confuse the terms "facts" and "prove"

 AKC defendants promote dock diving in full disregard to AKC's mission or purpose by running their operation through businesses. Under AKC standards all mixed breed dogs are bred without any cognizable purpose nor type nor cognizable function. (Ex. K). AKC gave mixed breeds a factual purpose: to create profitable revenues to finance their ailing corporation. Their sport is neither breed nor type nor function related, but is highly lucrative in its simplicity, marketing advantages, spectator attractiveness and the financial benefits thereof[18].

Sprung and Ljungren have full authority to control AKC. They exercised it by installing a business that operates against anything AKC represents. They ignored their member clubs, AKC's mission, Constitution and bylaws, tax statute, the true purpose and functions of dogs and finally the plaintiff. Those officers were on a mission to self-deal. SAC E I 5,9 And for those reasons they must be held accountable. See Federal Trade Commission v. Amy Travel Service, Inc., 875 F.2d 564, 574 (7th Cir. 1989) (""one may not enjoy the benefits of fraudulent activity and then insulate one's self from liability by contending that one did not participate directly in the fraudulent practices." FTC v. Amy Travel, No. 87 C 6776, slip op. at 32 (N.D.Ill. Feb. 10, 1987).

Plaintiff has alleged the essential elements of fraud. AKC defendants were aided by breaking the Animal Welfare laws and their 501(c)(4) statute. AKC's Motion to dismiss must be denied.

## IX. AKC DEFENDANTS REJECT CLAIM FOR LIBEL AND DEFAMATION

---

[18] In 2020 AKC signed a three-year agreement with ESPN to air and market their AKC dock diving events through the public wires. Those were than and are as of today held through their agency NADD. AKC itself does not officially own any dock diving facilities or mobile docks, the likelihood of non-disclosed ownership is alleged SAC E I ¶ 9 American Kennel Club, ESPN Ink Agreement for Dog Competitions | Pet Age

AKC defendants dispute the NADD to be their agency. Plaintiff alleged that the NADD defendants are agents and published a libelous and defamatory statement on Facebook. Ex. W

In Martin v. American Kennel Club, Inc., 697 F. Supp. 997 (N.D. Ill. 1988) the Court, who refers in this case to AKC as "American", cites AKC's basic function and purpose from the official court documents as ("….It was established to "adopt and enforce uniform rules regulating and governing dog shows and field trials . . . and generally to do everything to advance the study, breeding, exhibiting, running and maintenance of the purity of thoroughbred dogs" (D.Jt. 12(e) ¶ 1). American's members are not individuals but local autonomous dog clubs, which through their delegates elect American's Board of Directors ( id. ¶ 2). Dog shows held under American's rules are conducted by local clubs. Those clubs are either members of American or are licensed by American to hold specific shows under American's rules. American does not itself conduct dog shows ( id. ¶ 3)." …)

No club owns mobile docks or stationary facilities. In any scenario AKC must contract with an agency to conduct their dock diving events. Ex. D.  The one and only strictly exclusive agency for that are the NADD defendants with their 68 commercial operators. See In re Neptune World Wide Moving, Inc., 99 B.R. 584, 588 (Bankr. S.D.N.Y. 1989) ("Agency is a contractual consensual relationship where one agrees to act on behalf of another. In re Shulman Transport Enterprises, Inc., 744 F.2d 293, 295 (2d Cir. 1984). The Restatement 2d of the Law of Agency defines the relationship as follows: The fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.")

Contrary to AKC defendants' interpretation, the cited assertion of plain facts as required by Fed. R. Civ. P. 8(a)(2)  "AKC has not engaged or participated in or verified the ban that was published" allows to draw the plausible  inference that AKC has not yet applied any due process nor had AKC definitely concluded that their agent rightfully banned the plaintiff from AKC's events and title program. Fact: the NADD defendants cannot ban plaintiff from AKC events.

Plaintiff has a cause of action concerning the Facebook post[19]. See Brian v. Richardson, 211 A.D.2d 413 (N.Y. App. Div. 1995) ("A statement of opinion that implies a basis in facts which are not disclosed to the reader or listener is actionable not because it conveys a false opinion but rather because a reasonable listener or reader would infer that the speaker or writer knows certain facts, unknown to the audience, which support the opinion and are detrimental to the person toward whom the statement is directed (Gross v. New York Times Co., 82 N.Y.2d 146, 153-154). Plaintiff was banned from AKC events to retaliate and with the intent to injure.

The "various demand letters" that the AKC defendants refer to are emails and none of those contains any reference to a "threat" or the use of a "threat" or the expression of "threatening behavior" AKC defendants have failed to even simply copy a quote or cite just one single sentence from any of the emails provided that confirm harassment or threatening actions or unlawful behavior and therefor admit to the fact, that the reason for the ban was indeed nothing but a lawsuit.

AKC defendants accuse plaintiff in their footnote 6 pg. 16 of their Motion of a "frivolous claim" citing a passage from a document dated 02/06/22 provided as Ex. V . AKC defendants obviously failed to comb through the communications provided as EX. Z. If they had done so, they would have realized that plaintiffs AKC board complaint, an official and certified document, dated 03/15/22 outlines all incidents surrounding the retroactive rule change and consequences thereof and concluded that the issues were not resolved. The NADD defendants had only very briefly posted their original rankings and then removed them again to conceal the fact that they ever existed.  As of today, the issues remain unsolved. Ex.T does not show any "Senior" jumps. Plaintiff has alleged facts that satisfy all elements for claims of defamation and libel. AKC defendants Motion must be denied.

---

[19] Friedman v. Bloomberg L.P., 884 F.3d 83, 98 (2d Cir. 2017) ("Thus, even if Palladyne was asserting an opinion about Friedman's prior conduct, Palladyne's statement can still be read as conveying a negative characterization of Friedman without stating sufficient facts to provide the context for that characterization. Under New York law, such a statement is actionable. See Hotchner , 551 F.2d at 913. ")

### X.  CLAIM OF IMPEDIMENT AND OBSTRUCTION OF A PROFESSIONAL CAREER

AKC defendants' content that claims under this section are "novelties. "In no ways cognizable"

AKC defendants contradict themselves on pg. 3 ¶ 1 of their motion and acknowledge the fact

that plaintiff learned a trade to make a living was cognizable stating "apparently to further his

plan to become a dog trainer".   These claims involve plaintiff's livelihood.  He alleged

- That he heavily invested money, time, made career sacrifices and took business losses to learn the trades and skills necessary to become a water dog trainer

- That he transitioned from an equestrian trainer career to a dog trainer career due to his diminishing age-related physical abilities to properly train horses

- That he put his personal property, a Pitbull dog Bernhardt, to work to accomplish the merits and credentials necessary and that he placed in national and world championships in water dog retrieval related disciplines.

- That he participated in a unique competition venue of nationwide recognition and media attraction to establish client relationships and to make himself a name

-  That he had learned trades to become a sports dog massage therapist for jumping diving dogs

- That he can no longer show any diving dog at any AKC event held sanctioned and recognized by an organization that controls the market of millions of dog owners in the United States and around the world[20]

Plaintiff was a well-known and respected competitor on the NADD/AKC dock diving circuit. He

very successfully exhibited a massive stocky pit-bull who draw a lot of attention due to his breed,

impressive look and powerful physical abilities. Plaintiff interacted on all and any occasions with

exhibitors, judges and business owners and his motives, interests and career goals were known

within the community. The continued presence, exhibition and plaintiffs' success created

potential client awareness and plaintiff received generous sponsorships and support from

---

[20] *Catrone v. Massachusetts State Racing Comm*, 535 F.2d 669, 672 (1st Cir. 1976) (" In sum, the constitutionality of appellant's asserted power to bar without process licensed trainers from its track seems to us doubtful enough to support the issuance of federal preliminary relief in a case where the other equities so strongly favor it.")

members of the equestrian community, which by itself represents a significant market of well-situated dog owners, to be able to pursue his career change.

Plaintiff has alleged facts necessary to satisfy the elements of tortious interference with a prospective business advantage and pleaded damages as direct or proximate cause of AKC defendants' breach of fiduciary duty. Plaintiff throughout his entire SAC has alleged several claims that include the torts of fraud, retaliation, discrimination, defamation and breach of fiduciary duty. All those obstructed and impeded his career.

AKC's Motion must be denied.

### SUMMARY

AKC defendants' Motion to dismiss is filed on behalf of the AKC and two of its corporate officers, Doug Ljungren and Dennis B. Sprung. AKC is a non-profit tax exempt national governing body for dog sports and the largest pure breed registry in the world with the emphasized mission to represent the rights of all dog owners. A titanic size an operation that controls and impacts millions of dog sports and breed enthusiasts around the world and that those trust in and rely upon. Clearly, AKC defendants wish to persuade this Court that plaintiffs SAC is a "wild array of claims aimed at avenging the NADD defendants" implying, that plaintiff has absolutely no claims against the AKC defendants. Their seemingly restraint focus on disputing his standing in the criminal aspects of this case speaks for itself.  The wild assertion, that only the NADD is responsible for banning plaintiff from AKC sanctioned events is fully debunked by the actual act of sanctioning events, no less than *twenty-nine* factual references in the SAC asserting the NADD to be an agency and business associate off the AKC and through the existence of a contractual relationship aka property registration agreement. AKC defendants' misconduct in this case mounts up to epic proportions and their actions are straight forward outrageous.

Plaintiff concedes that he neither possesses the legal expertise nor does he have the power of perfect linguistic skills to draft court documents in the way the highly qualified opposing counsel did.  That however doesn't foreclose him from acquiring all trades needed to present

himself. The founding fathers of the United States of America granted this right in all their wisdom and foresight to assure that citizens with no financial means may utilize the checks and balances installed by the people to protect the people, that justice shall be served, regardless of the party's representation or corporate statute. Wherever Justitia's scale may drop to.

The United States of America is a free democracy that follows the principles of law and order. Every American citizen has the freedom and the right to follow their calling and to pursue their dream, whatever that might be, as long as obey by the rules and laws of their society. And that is what the plaintiff did, as unartfully pleaded as it might be.

In his response to AKC defendants Motion to Dismiss Plaintiff has provided several sets of facts that once pleaded in support to the already alleged facts, as an amendment or supplemental pleading, can save his complaint from dismissal. Plaintiff shall, at the Courts sole discretion. provide a proposed offer to amend or a more definite statement under Fed. R. Civ. P 12 (e) A dismissal with prejudice must not be the ultimate remedy here and plaintiff prays that this Court may come to that conclusion.

## CONCLUSION

For all the reasons stated above, AKC defendants have failed to meet their burden to prove that dismissal with prejudice is appropriate as to SAC counts I -V, VII, IX - XII. Moreover, their Motion failed to allege any specific defects of substance as to SAC counts I -V, VII, X and XI the latter addressing violations of AKC's Constitution and Bylaws involving SAC counts I - III, V and VIII. Plaintiff has stated multiple claims and alleged numerous facts which require judicial relief, therefore AKC defendants' Motion to dismiss must be denied.

Dated: May 22, 2022

respectfully submitted _____

(Alexander Gerding *Pro Se*)

25