UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER GERDING,<br><br>        *Plaintiff*,<br><br>-against-<br><br>AMERICAN KENNEL CLUB aka AKC, NORTH AMERICA DIVING DOGS LLC aka NADD, MR. DOUG LJUNGREN, MR. DENNIS B. SPRUNG, and MRS. DEBRA MARKWARDT,<br><br>        *Defendants*. | 1:21-cv-07958 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiff Alexander Gerding brings this action pursuant to twelve alleged violations of various criminal and administrative statutes, etc., against American Kennel Club ("AKC"), North America Diving Dogs LLC ("NADD"), AKC Vice President of Performance Events Mr. Doug Ljungren, AKC CEO Mr. Dennis B. Sprung, and NADD President Mrs. Debra Markwardt (collectively, "Defendants"). ECF No. 56, Second Amended Complaint ("SAC"). Defendants now move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on each count. ECF Nos. 59, 60. After careful review, Defendants' Motions, ECF Nos. 59, 60, are **GRANTED**. Plaintiff's request for leave to amend his Complaint is **DENIED**.

## BACKGROUND

  **I. Statement of Facts**[1]

  Co-Defendant NADD hosts animal showcase events, including a dog dock diving event, during which dog owners toss a toy into a body of water to encourage their dogs to jump into the water after it, with the goal of making the longest jump. SAC at 4. Competitors are not required

---

[1] For the purposes of this motion, the facts are drawn from the Complaint and presumed to be true.

to be registered with the AKC to participate in a NADD trial. ECF No. 59-1 at 9. Winners of NADD events are awarded titles recognized by the AKC. *Id.* at 9. Plaintiff's involvement with competitive dog diving began in September 2018, when he completed an online registration agreement with NADD and paid a fee to participate in dog diving competitions. *Id.* at 12. Sometime between May and September 2019, Plaintiff alleges he submitted a "Canine Listing Application" to AKC and paid a registration fee. *Id.* at 79. Between October 2018 and October 2020, Plaintiff then entered his dog in 91 NADD diving competitions. *Id.* at 41. Several of Plaintiff's claims arise from NADD's decision to ban Plaintiff from participating in further dog dock diving competitions due to his alleged threatening behavior. SAC, Ex. W, Facebook post.

In February 2021, NADD introduced a new evaluation system for dog diving, nullifying prior records and rankings. SAC at 21-22. Plaintiff complained the new system caused his dog's ranking to plummet. *Id.*

In February 2021, Plaintiff admits he "initiated a consumer complaint against the actions of the defendants by submitting professionally conducted material and non-emotional argumentation via email to the NADD." *Id.* at 24. NADD published a post on Facebook stating that NADD banned Plaintiff from further participation in NADD competitions, or from posting on their social media pages, based on "relentless" threats Plaintiff made against NADD in writing, and on social media sites. SAC, Ex. W, Facebook post. Plaintiff is silent on whether his statements to Defendants were threatening.

Plaintiff attempted to have NADD lift the ban, and claims that he filed an inquiry about the details of that ban on or about March 2, 2021. SAC at 25. Plaintiff then filed this action, alleging that as a result of the ban by NADD, Plaintiff has suffered significant damages totaling approximately $5.4 million, and bringing multiple claims. *Id.* at 52-59; ECF No. 61 at 14.

2

I. **Procedural History**

Plaintiff filed his complaint *pro se* on September 23, 2021 against American Kennel Club ("AKC"), North America Diving Dogs LLC ("NADD"), Mr. Doug Ljungren, Mr. Dennis B. Sprung, and Mrs. Debra Markwardt, (collectively, "Defendants"), alleging twelve violations of various statutes. ECF No. 1. Plaintiff was twice granted leave to amend his complaint to address deficiencies, which he filed on October 13, 2021 (ECF No. 13), and March 8, 2022 (SAC). Plaintiff alleges "consumer fraud" and "business fraud" (Counts I & V); constitutional violations (Counts II & III); "monopolization" under the Sherman Antitrust Act (Count IV); "hidden commission taking" under 18 U.S.C. § 1346 (Count VI); violations of the Animal Welfare Act (Count VIII); "falsification of business records and show records and show results" under 18 U.S.C. § 1001 (Count IX); and violations of AKC's tax-exempt status under 26 U.S.C. § 501(c)(4) (Count XI); "retaliation, libel, and defamatory statement per se" (Count VII); "breaches of contract" (Count X); and "discrimination from an equal employment or self-employment opportunity" and "obliteration and impediment of a professional career" (Count XII). SAC. On April 27, 2022 and May 11, 2022, NADD and AKC, respectively, filed motions to dismiss. ECF Nos. 59, 60. NADD and AKC also moved to dismiss on behalf of the individual defendants associated with the entities. The Court now considers Defendants' Motions to Dismiss.

## STANDARD OF REVIEW

I. **Federal Rules of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to

relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

II.     *Pro Se* **Litigant**

*Pro se* litigants faced with motions to dismiss "must be held to less stringent standards than formal pleadings drafted by lawyers." *Ahmed v. GEO USA LLC*, No. 14-cv-7486, 2015 WL 1408895, at *2 (S.D.N.Y., Mar. 7, 2014). Practically speaking, "[c]ourts read the pleadings, briefs, and opposition papers of *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Carter v. Ponte*, No. 17-CV-1830 (VSB), 2018 WL 4680995 at *4 (S.D.N.Y. Sept. 28, 2018) (collecting cases). *Pro se* status, however, "does not exempt a party

4

from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Plaintiff's Claims Against AKC and NADD Corporate Officers Are Dismissed for Lack of Individual Lability.

Plaintiff's SAC names AKC corporate officers Mr. Sprung and Mr. Ljungren, and NADD corporate officer Mrs. Markwardt. However, Plaintiff's SAC does not allege facts supporting individual liability. Unless a corporate officer purports to bind himself under the contract in dispute, corporate officers are generally not liable for the acts of the corporation. *Stern v. H. DiMarzo, Inc.*, 77 A.D.3d 730, 730 (2d Dep't 2010). "There must be clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal[.]" *Stamina Prod., Inc. v. Zintec USA, Inc.*, 90 A.D.3d 1021, 1022 (2011) (internal citations and quotations omitted). As will be discussed in further detail below, Plaintiff did not enter into a contract with AKC or NADD. Even if the Court were to find Defendant did enter into a contract, Plaintiff has failed to allege any facts to support the assertion that the three corporate officers explicitly and directly intended to individually bind themselves to the contract. *Stern*, 77 A.D.3d at 730. Plaintiff has failed to allege individual liability for Mrs. Markwardt, Mr. Sprung and Mr. Ljungren, and these claims are therefore dismissed with prejudice.

### II. Plaintiff's Fraud Claims Fail To State A Plausible Claim and Must Be Dismissed With Prejudice.

Plaintiff alleges "consumer fraud" and "business fraud" under 18 U.S.C. § 1346 and 31 U.S.C. § 3802 (Counts I and V). Plaintiff alleges that Defendants, collectively, "willfully and

5

intentionally made false claims and publications to misrepresent the material facts of their business settings." SAC at 65. Allegations of fraud are subject to a heightened pleading standard under the Federal Rules. See, Fed. R. Civ. P. 9(b) (plaintiff must allege the circumstances constituting fraud "with particularity"). To successfully allege a fraud claim in the state of New York, a plaintiff must include: "[1] a false representation of material fact, [2] knowledge by the party who made the representation that it was false when made, [3] justifiable reliance by the plaintiff, and [4] resulting injury." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006). Fraud in New York must be established by clear and convincing evidence. *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 10 (1972). In compliance with Rule 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). See also *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006) ("Conclusory pleadings on information and belief are inadequate as a matter of law to survive a motion to dismiss" unless they are "accompanied by a statement of facts upon which the belief is founded.") (internal quotations and citations omitted).

 In this case, Plaintiff has not satisfied the four elements necessary to a plead a fraud claim. Plaintiff's Count I "consumer fraud" claim is based on vague and purely conclusory allegations unsupported by factual details required to meet the heightened pleading standard for fraud under Rule 9(b). SAC at 61-65. Plaintiff alleges that Defendants "willfully and intentionally made false claims and publications to misrepresent the material facts of their business settings." *Id.* at 65. Plaintiff also claims Defendants "willfully and intentionally deceive the general public and the

plaintiff by withholding the material fact that all AKC/NADD events are run by private commercial for-profit businesses." *Id.* at 62. Plaintiff has not pleaded with specificity that Defendants made a false representation of material fact, that Defendants did so knowingly, that Plaintiff justifiable relied the representation or, importantly, that Plaintiff suffered an injury as a result.

In Count V, Plaintiff alleges NADD Defendants used AKC's trademark or logos while running dog dock diving events, which Plaintiff asserts was badly managed, and risked manipulation of scores. *Id.* at 69-71. But Plaintiff does not "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Nakahata*, 723 F.3d at 197. Plaintiff has not alleged that NADD's use of AKC materials is fraudulent in any way.

Plaintiff failed to state a fraud claim upon which relief can be granted. Accordingly, Plaintiff's "consumer fraud" and "business fraud" claims are dismissed with prejudice.

**III.     Plaintiff's Constitutional Claims Fail to Meet the State Action Requirement.**

Plaintiff alleges constitutional violations under 42 U.S.C. § 1983 of Plaintiff's First and Fourteenth Amendment rights (Counts II and III). However, constitutional violations require a showing that "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Defendants AKC and NADD are private corporations. Moreover, to hold private actors liable for constitutional violations, Plaintiff must sufficiently allege that the state or federal government "dominate[s] an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Edmonson*

7

*v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620 (1991). Plaintiff does not plead a viable claim under § 1983 because he has failed to allege that AKC and NADD have a "close nexus" to the state to warrant liability. *Ashby v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 31 F. Supp. 2d 27 (E.D.N.Y. 2004). Plaintiff's attempts to establish that Defendants have a "close nexus" to the state because the utilized docks are owned and managed by municipalities, or that Defendants operate in animal control, is unavailing, because Plaintiff has not alleged that the government dominates the activity of dog dock diving to such an extent that Defendants have acted with governmental authority. SAC at 37, 66; ECF No. 63 at 18.

Because Plaintiff has failed to meet the state action requirement, his constitutional claims are without basis and must be dismissed with prejudice.

### IV. Plaintiff Fails to State a Plausible Claim for "Monopolization" Under the Sherman Act.

In Count IV Plaintiff alleges "monopolization" under the Sherman Antitrust Act (15 U.S.C. §§ 1 and 2). At the threshold, Plaintiff's claim under Section 1 is dismissed, as Section 1 does not provide a private right of action. *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012). Under Section 2, a monopolization claim must allege: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *Energex Lighting v. North Am. Philips Lighting*, 765 F. Supp. 93, 101 (S.D.N.Y. 1991) (*quoting United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)).

To state a plausible claim for monopolization, a plaintiff must show: (1) the defendant had monopoly power in the relevant market, (2) the defendant engaged in anticompetitive conduct, and (3) the defendant's violation of the Sherman Act caused plaintiff's injury. *Irvin*

*Indus., Inc. v. Goodyear Aerospace Corp.*, 974 F.2d 241, 244 (2d Cir. 1992) (quotations and citations omitted). A plaintiff must define a "plausible" and relevant product market. *Chapman v. N.Y. Div. for Youth*, 546 F.3d 230, 237 (2d Cir. 2008). A "bald assertion [] as to [a relevant market's] existence or definition" is insufficient. *Emigra Grp., LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp.2d 330, 359 (S.D.N.Y. 2009). Here, Plaintiff appears to claim a single brand market exists for "AKC titles." In the Southern District of New York, a "single brand name product cannot define a relevant market." *Integrated Sys. and Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp.2d 286, 298 (S.D.N.Y. May 13, 2010). This is because in an antitrust analysis, Plaintiff must allege a product that is "functionally interchangeable with many others, that competes in a [specific] market." *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001). The Supreme Court has found that the power that "automobile or soft-drink manufacturers have over their trademarked products is not the power that makes an illegal monopoly. Illegal power must be appraised in terms of the competitive market for the product." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956). In this case, Plaintiff defines the product market as "AKC titles" which are only available through AKC and its vendor NADD. SAC at 13, 29; ECF No. 63 at 27-28. As such, Plaintiff has not alleged a product that is "functionally interchangeable" or that there exists a competitive market for the product. Because Plaintiff's alleged market is limited to a single-brand product, "AKC titles," Plaintiff has failed to properly define a plausible market.

Even if the Court construes the relevant market broadly as one of title recognition programs, Plaintiff has not sufficiently alleged that the AKC Defendants had monopoly power in the relevant market. Plaintiff identifies competitors that provide similar title recognition programs. SAC at 13; ECF No. 63 at 10-11. By Plaintiff's own admission, ample competition

exists for title recognition programs, undercutting Plaintiff's monopolization claims. Plaintiff alleges that the AKC Defendants:

> us[e] oppressive tactics and maneuvers against all and any individually privately or sports club owned Dog Dock diving facilities preventing those from applying for their own AKC licenses and forcing them to go through the business NADD LLC as a franchise and show broker, middleman and buffer to be able to conduct AKC Dog Diving Trials.

SAC at 29. Plaintiff provides no support necessary for his monopolization claim under the Sherman Act. Accordingly, Plaintiff's Sherman Act claim is dismissed with prejudice.

### V. Plaintiff's Other Claims Under Various Federal Statutes Fail.

Plaintiff brings claims under multiple federal statutes, alleging: "consumer fraud" and "business fraud" (Counts I & V); constitutional violations (Counts II and III); "monopolization" under the Sherman Antitrust Act (Count IV); "hidden commission taking" under 18 U.S.C. § 1346 (Count VI); violations of the Animal Welfare Act (Count VIII); "falsification of business records and show records and show results" under 18 U.S.C. § 1001 (Count IX); and violations of AKC's tax-exempt status under 26 U.S.C. § 501(c)(4) (Count XI); and "discrimination from an equal employment or self-employment opportunity" and "obliteration and impediment of a professional career" (Count XII). SAC. None of the federal statutes cited afford a private right of action. As such, Plaintiff's various claims are doomed.

Plaintiff alleges AKC and NADD entered into a contract, and claims NADD's payment of franchise fees to AKC constitute "honest services" fraud under 18 U.S.C. § 1346. SAC at 42, 72-73. It is unclear why Plaintiff views this routine payment of fees as "kickbacks." At the threshold, 18 U.S.C. § 1346 is a criminal fraud statute, and criminal statutes generally do not provide a private cause of action. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). "There is a strong presumption that criminal statutes, enacted for the protection of the general public, do not create private rights of action." *Smith v.*

*Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016), aff'd sub nom. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) (internal citations and quotations omitted). Courts in this Circuit have found 18 U.S.C. § 1346 does not provide a private right of action. See *Morse v. Boerner*, No. 10-CV-02811 (JFB) (WDW), 2011 WL 13305339, at *8 (E.D.N.Y. Aug. 10, 2011); *Gaind v. Pierot*, No. 04-CV-09407 (TPG), 2006 WL 846268 (S.D.N.Y. Mar. 31, 2006), aff'd, 282 F.App'x 946 (2d Cir. 2008). When a federal criminal statute does not expressly provide a private right of action, the Court may consider "whether it can reasonably be inferred that Congress intended to create such a private remedy." *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 307–08 (2d Cir. 2000). In this case, Plaintiff has not set forth why the Court should engage in this inquiry, or that the statutes provide a private remedy. Moreover, fraud statutes are subject to the heightened pleading requirements under Rule 9(b). Because there is no private right of action under § 1346, Count VI of Plaintiff's SAC is dismissed with prejudice.

Additionally, Plaintiff unclearly contends Defendants' dog dock diving setups endanger participating dogs and amount to violations of the federal Animal Welfare Act (AWA). SAC at 43, 75-76. There is no private right of action under the AWA. See, 7 U.S.C. §§ 2146, 2132(b); *Moor-Jankowski v. Board of Trustees of New York University*, No. 96-CV-5997, 1998 WL 474084, at * 8 (S.D.N.Y. Aug. 10, 1998) ("Nowhere does the AWA provide for private citizens, or whistleblowers in particular, to file private causes of action for violations"). Therefore, Count VIII is dismissed with prejudice.

Plaintiff asserts that AKC violated its tax-exempt status under IRC § 501(c)(4) by permitting the registration of mixed-breed dogs. Count XI, SAC at 83-85. There likewise is no private right of action under the Internal Revenue Code. *Seabury v. City of New York*, 2006 WL 1367396 (E.D.N.Y. May 18, 2006). Therefore, Count XI is dismissed with prejudice.

Plaintiff brings a claim for alleged "falsification of business records and show records and show results" under 18 U.S.C. § 1001 in Count IX. Section 1001 regulates the federal government, not private corporations. Because Plaintiff has not met the state action requirement, Count IX is dismissed with prejudice.

### VI. Plaintiff's First Amendment Retaliation Claim and New York State Claims for Libel and Defamation Fail.

In Count VIII Plaintiff alleges "retaliation, libel, and defamatory statement per se." Plaintiff appears to attempt to plead three separate causes of action: (1) libel, (2) defamation *per se*, and (3) First Amendment retaliation. Under New York law, the elements of libel are: "[1] a false and defamatory statement of fact; [2] regarding the plaintiff; [3] which are published to a third party and which [4] result in injury to plaintiff." *Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998, 1002 (Sup. Ct. 2005) (citing *Idema v. Wager*, 120 F.Supp.2d 361 (S.D.N.Y. 2000)). A statement is defamatory *per se* if it "(1) charges the plaintiff with a serious crime; (2) tends to injure the plaintiff in her or his trade, business, or profession; (3) imputes that the plaintiff has a loathsome disease; or (4) imputes unchastity to a woman." *Laguerre v. Maurice*, 192 A.D.3d 44, 50 (2020).

Count VIII is based on a Facebook post by NADD that alleged NADD banned Plaintiff from participation in dog dock diving competitions. SAC at 38, 73-75. The Facebook post reads as follows:

> Effective immediately we are banning Alexander Gerding from NADD social pages and NADD events. He is not welcome to jump with our organization, indefinitely. Simple reason. He is threating NADD. He has been relentless in commenting and messaging his threats and assertions regarding Hydrodash.

SAC, Ex. W. Plaintiff alleges "[t]he NADD [D]efendants exposed the plaintiff directly to tens of thousands of their following audience providing them with false information and defamatory content." SAC at 74. Plaintiff claims NADD instituted the ban in retaliation for Plaintiff's

12

complaints about competition rule changes, and complaints regarding the "legality, liability, breaches of contract, and conflicts of interest." *Id.* at 22, 24-25. Plaintiff admits the NADD Defendants, and not the AKC Defendants, made the allegedly defamatory statements. *Id*. at 37-41. For that reason, Plaintiff's defamation claim against the AKC Defendants is dismissed with prejudice.

Even so, a statement that is substantially true is not defamatory, and is not actionable. *Tannerite Sports, LLC v. NBCUniversal News Grp.,* 864 F.3d 236, 247 (2d Cir. 2017); *see also Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (citations omitted) (a plaintiff must show the falsity of the statement to allege libel). Here, Plaintiff "has not plausibly alleged the falsity of the[] statement." *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 148 (S.D.N.Y. 2022). NADD evidently banned Plaintiff, and as such the statement in the Facebook post that Plaintiff was banned was indisputably true. NADD stated the ban was due to Plaintiff's repeated threats against them. Plaintiff acknowledges he consistently complained to Defendants regarding his concerns about the "legality, liability, breaches of contract, and conflicts of interest" of the changes made to NADD's evaluation system that diminished his dog's rankings. SAC at 28. He admits his email correspondence with NADD was "argumentation." *Id.* Plaintiff has not directly challenged Defendants' characterization of statements he made to Defendants as threats, and there are no facts that support an inference that Plaintiff's statements were not threats.

In addition, the Facebook post does not identify Plaintiff's trade, type of business, or profession and does not reflect on his performance in that profession. *Golub v. Enquirer/Star Group Inc.*, 89 N.Y.2d 1074, 1076 (1997). Therefore, Plaintiff's libel and defamation *per se* claims are dismissed with prejudice.

To state a claim for First Amendment retaliation under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law, and "must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Chladek v. Verizon N.Y. Inc.*, 96 F. App'x 19, 22 (2d Cir. 2004) (internal quotation marks and citation omitted). As a threshold matter, Plaintiff's First Amendment retaliation claim fails to satisfy the state action requirement. *See Tancredi v. Metro. Life Ins. Co.*, 316 F. 3d 308, 313 (2d Cir. 2003). Here, Defendants are private actors. Dismissal with prejudice of Plaintiff's claim for First Amendment retaliation is therefore necessary.

## VII. Plaintiff's Breach of Contract Claims Fails To State A Plausible Claim and Must Be Dismissed With Prejudice.

Plaintiff alleges "breaches of contract" against Defendants in Count X. To establish a breach of contract claim, a plaintiff must plead "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust*, 375 F.3d 168, 177 (2d Cir 2004). "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 N.Y. Jur. 2d, Contracts § 9)." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 [2009]. An offer must include "sufficiently definite" terms. *Express Indus. and Terminal Corp. v. NY State Dep't of Transp.,* 93 N.Y.2d 584, 590 (N.Y. 1999).

Plaintiff has failed to adequately allege the existence of a contract between himself and the NADD Defendants, or the AKC Defendants. In both cases, Plaintiff points to registration forms to allege he entered into a contract with AKC (by registering his dog with AKC, which

14

permitted him to participate in AKC dog diving trials), and with NADD (by registering for NADD's dock diving competitions). SAC at 59, 78-79. These documents were necessary for Plaintiff to compete. Neither of these documents constitute a contract because Defendants did not create an offer. Rather the registration forms outlined eligibility requirements and rules to compete in dog dock diving. There was no meeting of the minds or mutual assent between Plaintiff and Defendants to enter into a contract.

Even if the Court found the existence of a contract, Plaintiff's breach of contract claims are wholly unrelated to the registration forms. For example, Plaintiff alleges Defendants breached their contract due to the water temperature at dog diving events, SAC at 80, and "rejecting and denying plaintiff's correspondence", *Id*. at 82.

Plaintiff's registration with AKC and NADD did not create a binding agreement between himself and Defendants. As such, Plaintiff's breach of contract claim fails and is dismissed.

**VIII.   Plaintiff's Employment Discrimination Claim Fails.**

Plaintiff alleges "[d]iscrimination from an equal employment or self-employment opportunity" and "obliteration and impediment of a professional career" in Count XII. *Id.* at 85. Plaintiff claims Defendants "stripped the plaintiff from continuing his participation and education in a specialty field and deprived him of an equal self-employment opportunity as all existing and potential NADD associated business owners had and have." *Id*. at 86. Plaintiff appears to allege employment discrimination. However, because Plaintiff was not employed by Defendants and did not apply for employment with Defendants, Plaintiff lacks standing to assert an employment discrimination claim.

Plaintiff also appears to allege interference with a prospective business relationship, claiming Defendants "substantially impeded and obstructed plaintiff's career as a physical massage therapist for sports dogs" by banning Plaintiff from participation in NADD and AKC

dog diving events. *Id.* at 86. Plaintiff fails to explain why NADD's ban on attending and competing in NADD events prohibits him from pursuing his desired career as a physical massage therapist for sports dogs. Plaintiff has already established the existence of other similar title recognition programs, and he does not allege Defendants' actions prevent him from working with non-NADD or AKC programs. Plaintiff has no legally cognizable claim against Defendants under his theory of interference. As such, Plaintiff's employment claims are dismissed with prejudice.

## IX.     Plaintiff's Request to Amend His Complaint Is Denied.

Finally, Plaintiff seeks to amend his Complaint. In the *pro se* context, the Second Circuit has held that courts should generally not dismiss "a complaint without granting the plaintiff leave to amend," however "leave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

There is no indication that granting Plaintiff leave would be anything but futile: Plaintiff has twice been given the opportunity to revise his Complaint to bring cognizable claims against Defendants. Yet Plaintiff has consistently failed to allege sufficient facts to support any viable claims, and the inability to establish each element of each claim dooms his Complaint. For example, Plaintiff has not sufficiently pleaded that he entered into a contract with either Defendant. And at the threshold, many of Plaintiff's claims must be dismissed for failure to fulfill the state action requirement.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 59 and 60, is **GRANTED** in their entirety; Plaintiff is **DENIED** leave to amend his Complaint. Plaintiff's

Motion to Compel Arbitration and Motion to Stay, and Defendants' Motion for Protective Order and Motion for Preliminary Injunction are DISMISSED as moot.

**SO ORDERED.**

**Dated:** **July 18, 2023**
    **New York, New York**                                 **ANDREW L. CARTER, JR.**
                                                          **United States District Judge**